### THE T. F. OAKES.

### KASBEK S. S. CO., Limited, v. THE T. F. OAKES.

(District Court, E. D. New York. April 29, 1898.)

SALVAGE COMPENSATION—SICKNESS OF SHIP'S CREW—TOWAGE.

Seventeen thousand dollars, with disbursements and interest thereon, awarded a steamer for bringing into port, a distance of about 300 miles, a full-rigged sailing ship, valued, with her cargo, at about $200,000, where, on account of long-continued sickness, there were not sufficient men out of the ship's crew to navigate her, when the provisions of the ship were nearly

exhausted, and when the state of the weather rendered it difficult and dangerous to perform the service.

Cowen, Wing, Putnam & Burlington, for libelant.
Butler, Notman, Joline & Mynderse, for claimant.

THOMAS, District Judge.    This action is to recover for salvage service.    The T. F. Oakes, a full-rigged, three-masted sailing ship, invited the libelant's aid under the following circumstances:    The Oakes, bound for the port of New York, left Hong Kong, China, June 10, 1896, with a cargo of rattan, wool, and hides, and on Monday, the 15th day of March, 1897, at about 11 o'clock p. m., was in latitude 37° 52′ N., longitude 69° 30′ W.    She left China with a crew of 22 men, besides the captain, who was accompanied by his wife.    Before meeting the Kasbek, four sailors, the cook, and mate had died on the voyage; and at the time of such meeting the only persons capable of coming on deck were Abrams, the second mate, Regan, the third mate, Fraser, a sailor, the captain, his wife, and two Chinamen, who were the cook and steward.    Eleven of the crew, including the boatswain and carpenter, were in the forecastle, sick,—if not in danger of death, yet utterly prostrated,—and some three of them were incapable of speech.    The captain's power of speech had been impeded by a paralytic affection, and he had lost the use of one of his hands on the voyage; but, although of slight physical service, he was on deck, and gave directions concerning the ship.    Abrams, the second mate, Regan, the third mate, and Fraser, the sailor, were suffering from weakness; their ability to walk was much impaired; and Fraser became substantially incapacitated after the arrival of the Kasbek.    In the log book there is an entry on March 13th as follows:    "Only three men on deck now."    And on the 14th of March help was so scanty and incapable that the wheel was lashed, and the captain's wife stood watch over the same for the entire day. When the Kasbek arrived, the Oakes was only carrying the lower top sails, the foremast stay sail, and maybe the jib sail; and immediately thereafter the stay sail and jib sail seemed to have been hauled in.    The Kasbek was a steamer of the value of $175,000. The T. F. Oakes was worth about $40,000.    Her gross freight was $17,000, $4,000 of which was prepaid in China; and the port charges in New York, incident to the arrival of the vessel and delivery of her cargo, were about $1,700.    Her cargo was worth $160,903.    The wages of the crew of the Oakes, paid them in New York, were $4,232.56; and those of the master, $1,840.    The Kasbek sailed under a charter from Barry Dock, England, February 17, 1897, for Philadelphia, Pa., where she was loaded with oil, and was proceeding thence to Fiume, Austria, at the time of meeting the Oakes.    Her total freight was $13,246.30.    The Kasbek was a schooner-rigged, three-masted steamship, of 2,099 tons net register, 310 feet in length, and valued at $175,000.    She occupied 11 days in the salvage service, and her daily earnings on the basis of the freight were $265, as computed by the libelant, and $200, as computed by the claimant. The navigation of the Oakes depended upon the remaining capacity and endurance of the persons above described.    They alone could

co-operate with those on the Kasbek to take her in tow. The weather was not dangerous for usual navigation, but arduous, if not perilous, in view of the condition of the Oakes' crew. Indeed, the attempt of the Kasbek to take in tow the Oakes on the night of March 15th resulted in the line that was attempted to be carried for this purpose fouling the Kasbek's propeller, and the consequent disablement of the steamer to such an extent that it was not until Thursday morning that the propeller could be again put in action, and the Oakes reached. The Oakes in the meantime had drifted into latitude 38° 29′, longitude 68° 9′. It is also noticeable that on the night of March 15th a collision of the vessels was barely escaped, while they were maneuvering to allow the passing of a line. The Oakes, in her long voyage, had met but one ship capable or willing to render aid; and that was the Gov. Robie, whom she spoke on the 12th of January, and from whom she obtained additional provisions. It will be observed that as early as January 12th there was anticipation of insufficient provisions, and, before the Kasbek's crew boarded the Oakes, the captain of the latter ship, by way of prompting the Kasbek's aid and expediting her movements, stated that the Oakes had provisions for five days; but thereafter this representation was claimed by the same person to have been false, and that there were supplies for nine days. The provisions of the Oakes were substantial enough, but quite unsuitable for a crew in a state of illness and impairment that prevailed. The Kasbeck furnished proper nutriment for all on the Oakes. There are two features of the Oakes' situation that seem to render her in a less dangerous condition than would appear from the narration of the incapacity of her crew: She was about 300 miles from her port, and had reached a position where she might hope to meet vessels with some frequency. In fact, after meeting the Kasbek, and before she was finally taken in tow, she was within signaling distance of at least two other ships, as her captain testifies. These facts should have their proper influence in diminishing the value of the salvage service. If the ship had been in midocean, her deliverance would have been possible, but improbable. As it was, the balance of probabilities favored her ultimate rescue through the aid of some passing vessel. But, as her dependence upon the few incapable persons aboard was of a most unsubstantial nature, her hope in any case was in the appearance of a vessel willing and able to assist her. The Kasbek was in fact that ship, and whether another would have appeared seasonably to save the lives of the sick, and to deliver the ship and her cargo, which was substantially at the mercy of the sea, is a matter of some speculation.

It is desirable that the award should be ample, but that its ascertainment should not be unduly influenced by the pitiful condition of the crew. Yet the physical state of the crew essentially affects the consideration of the question of compensation: (1) Because the salving vessel brought wholesomeness to the uncleanly quarters of the sick, and such strengthening aliment as was instantly demanded; thereby, it may be fairly inferred, saving life. (2) Because the reduced and enfeebled condition of the crew augured mishap for the

vessel and its cargo.    Awards should be sufficient to invite vessels to the aid of others in distress, lest the prevailing prejudice against diversion from usual employments and fixed purposes, to obtain some unusual gain, be increased.    It is noticeable that the welcome extended on the sea to salving vessels by imperiled mariners yields readily on land to a disclaimer of danger, or of valuable service rendered, with the result that the salvor is too often commended to a court for a just recognition of his merit.    Such spirit of complacent recollection of jeopardy, and the rescue therefrom, should not be encouraged.    In view of the facts in this case, somewhat peculiar in nature, it is considered that the libelant should recover for the services rendered the Oakes the sum of $17,000, and also its disbursements, amounting to the further sum of $2,350, with interest on such sum of $2,350 from the date of the payments of the various items thereof, besides costs.    Let a decree be entered accordingly.